IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-255-FL

| | | |
|---|---|---|
| HONG LIU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| EATON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's partial motion to dismiss and motion for judgment on the pleadings (DE 19). The motion has been briefed fully, and in this posture, the issues raised are ripe for ruling. For the following reasons the motion is granted.

**STATEMENT OF THE CASE**

Plaintiff, proceeding pro se, commenced this action on June 12, 2020, asserting claims against defendant, his former employer, for retaliation and discrimination based upon age, race, and national origin, under Title VII, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq. Plaintiff seeks back pay and benefits; reinstatement; and compensatory and punitive damages.

Defendant answered and filed the instant motion, on September 11, 2020, seeking dismissal of plaintiff's discrimination claims.[1] Defendant relies upon two documents referenced in the complaint and attached to its motion: 1) a document captioned "Letter of Concern," dated April

---
[1] Defendant does not seek dismissal of plaintiff's retaliation claim.

26, 2019 (hereinafter the "Letter of Concern"); and 2) a document referencing "Performance Improvement," dated September 26, 2019 (hereinafter the "Performance Improvement letter").

Plaintiff responded in opposition to the instant motion on October 2, 2020, and defendant replied on October 16, 2020. On November 9, 2020, the court stayed scheduling conference activities pending decision on the instant motion.[2]

## STATEMENT OF FACTS

The facts alleged in the complaint[3] may be summarized as follows. Plaintiff was born in China in 1958, and he speaks English as a second language, "with rather strong accent." (Compl. (DE 1-2) at 12). Defendant first hired plaintiff as a contract employee as a software engineer in 2013. In 2014, he was selected to "convert to [a] regular employee" of defendant. (Id. at 1). "Throughout almost seven years of work and employment with [defendant] until . . . October 2019, [plaintiff] received positive job performance reviews and feedback from his managers and colleagues." (Id.). For example, plaintiff alleges that in 2019 he "did well as coordinator for a big software version release . . . and received praises from the team members." (Id. at 7). In April 2019, however, plaintiff's manager issued to plaintiff the "Letter of Concern," which notes, inter alia, that "[c]ommunication is an ongoing issue and a critical concern." (Id. at 1; see Def's Mot. Ex. A (DE 19-1) at 2).

Plaintiff complained to defendant's management, human resources and "Ombudsman." (Compl. (DE 1-2) at 1). Plaintiff alleges that "on or around September 26, 2019, [he] was given the choice of being placed on a performance improvement plan (PIP), or transition, [and he] chose to be placed on the transition plan." (Compl. (DE 1-3) at 3). The September 26, 2019, Performance

---

[2] On the same date, the court also denied plaintiff's motion for discovery.

[3] All references to the complaint or "compl." in citations herein refer to the complaint and all of its attachments.

2

Improvement letter referenced in plaintiff's complaint (id.), states, inter alia, "your work performance is not meeting the expectations for your job." (Def's Mot. Ex. B. (DE 19-2) at 2). In addition, according to plaintiff, defendant presented to plaintiff a termination "agreement and general release" in September 2019, and "officially terminated [plaintiff's] employment on Oct[ober] 7, 2019." (Compl. (DE 1-2) at 1-2).

Plaintiff alleges that he was "replaced by someone sufficiently younger in India." (Id. at 3). Plaintiff alleges that several other engineers and managers were demoted or terminated in the time period between 2014 and 2016. (Id. at 9). Plaintiff asserts "[t]here were quite a few instances when a software engineer was laid off in a U.S. team, the position was transferred to India, and [defendant] hired very young persons who just graduated from college to fill the position." (Id. at 10). Plaintiff asserts that he was discriminated against by being requested "to attend telephone conferences outside work hours in the office," and by being issued the Letter of Concern, and by being terminated. (Id. at 13).

## COURT'S DISCUSSION

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

In reviewing a motion for judgment on the pleadings, under Rule 12(c), the court "appl[ies] the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012).

B.  Analysis

1.  Race Discrimination

Plaintiff asserts a claim for race discrimination in his complaint. A prerequisite to asserting a claim in a federal court action, however, is that the claim falls within "the scope of the administrative investigation that can reasonably expected to follow the charge of discrimination" filed with the Equal Employment Opportunity Commission ("EEOC"). Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002). Here, plaintiff did not allege discrimination based upon race in his EEOC charge. (See Compl. (DE 1-3) at 3-4). Rather, he alleged discrimination based upon age and national origin. (Id.). Therefore, plaintiff did not meet the statutory requirements for exhaustion for this claim, and it must be dismissed without prejudice.

2.  National Origin Discrimination

Title VII makes it unlawful for an employer to "discharge any individual . . . because of such individual's . . . national origin[.]" 42 U.S.C. § 2000e-2(a)(1). A plaintiff asserting a Title VII claim is "required to allege facts to satisfy the elements of a cause of action created by that statute"—here, that (1) plaintiff was discharged and (2) the discharge was because of his national origin. McCleary-Evans v. Maryland DOT, 780 F.3d 582, 585 (4th Cir. 2015).

Plaintiff asserts two alternative theories of national origin discrimination in support of his claim: 1) that defendant discharged plaintiff because of his accent, and 2) that defendant discharged

4

plaintiff because he was American and not from India. (See Compl. (DE 1-2) at 10, 12-13).[4] Plaintiff, however, does not allege sufficient facts permitting a plausible inference of national origin discrimination on either theory.

First, with respect to accent, plaintiff fails to allege any facts plausibly suggesting discharge on this basis. Indeed, plaintiff was hired as a contractor employee in 2013 with the same accent, and he was employed in the same software engineer team in 2014, with the same accent. (Compl. (DE 1-2) at 1). Moreover, plaintiff alleges he was replaced by someone "in India." (Id.). These allegations preclude an inference that plaintiff was discharged due to his accent. See Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991).

Furthermore, plaintiff has not alleged any statements by defendant's employees referencing plaintiff's accent, or other evidence, suggesting that plaintiff's discharge was based upon his accent. Plaintiff asserts nonetheless that defendant gave reasons for his termination that themselves reveal discrimination based upon his accent. (See Pl's Opp. (DE 23) at 1-2). Plaintiff points to the Letter of Concern transmitted to him for a "so called communication issue," suggesting that this was a veiled reference to his accent. (Id.; Compl. (DE 1-2) at 1). Plaintiff also cites to the September 26, 2019, Performance Improvement letter. (Id.; Compl. (DE 1-3) at 3). However, the actual documents referenced by plaintiff do not suggest anything about plaintiff's accent or Chinese origin. Rather, the Letter of Concern, for example, describes multiple issues with communication in terms of work functioning and performance, not accent:

---

[4] Plaintiff suggests that, apart from discharge, he was also subject to adverse employment actions by receiving the Letter of Concern and by being requested "to attend telephone conferences outside [of] work hours in the office." (Compl. (DE 1-2) at 13; see Compl. (DE 1) at 5). Neither alleged action, however, constitutes an actionable adverse employment action. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). Moreover, plaintiff did not timely file a charge of discrimination based upon receipt of the Letter of Concern, nor any discrete action taking place prior to May 23, 2019, 180 days before plaintiff filed his EEOC charge. See 42 U.S.C. § 2000e-5(e)(1), (f)(1). Therefore, claims asserted on the basis of these employment actions, if any, must be dismissed without prejudice for failure to state a claim.

> We discussed communication issues resulting in a misunderstanding on how adopters were to use our PX Red "test platform" – we needed multiple discussions and emails to get on the same page. . . . We discussed overarching issues with communication, issues on not being on the same page as others, email reliance/frequency, and passive team interaction. . . . We discussed the Expertise List activity and the issues regarding your methods of communication and delegation with the team. . . . We discussed the ineffectiveness of remote communication . . . .
>
> . . . . Beyond attendance, you need more active engagement and collaboration during meetings. . . .You have a habit of interruption and talking over others. . . . Overreliance on email communication to the point where fellow team members have referred to the issue as 'noise' . . . . You resist feedback presented to you, and actively work to avoid these discussions.

(Def's Mot. Ex. A (DE 19-1) at 2; see Compl. (DE 1-2) at 1). Similarly, the September 26, 2019, Performance Improvement letter addresses multiple substantive issues with communication, not in reference to accent:

> [T]he overall communications breakdown has persisted and in some cases has worsened during the month of September by demonstrated misuse of e-mail based communications and general resistance to feedback . . . . Effective and efficient communications including verbal, written, active engagement, maintaining an effective dialogue, over-use and misuse of email to resolve issues, awareness of impact you have on others due to communication choices. . . delivering unambiguous updates during planning and review meetings.

(Def's Mot. Ex. B (DE 19-2) at 2; see Compl. (DE 1-3) at 3). In sum, references to "communication" in this context, particularly in light of plaintiff's alleged employment history with defendant, cannot plausibly be inferred to be references to plaintiff's accent or Chinese origin.

Second, with respect to plaintiff's alleged status as an "American worker[]," instead of an "Indian" nationality worker, (Compl. (DE 1-2) at 10), plaintiff has not alleged facts permitting an inference that he was discharged on this basis. None of the documents referenced in the complaint state anything about plaintiff's status as an American worker as opposed to a foreign worker. (See Def's Mot. Ex. A (DE 19-1) at 2; Def's Mot. Ex. B (DE 19-2) at 2). The mere fact that plaintiff's position allegedly was filled by "a new hire of software test engineer position in PX-Red team in

6

India," (Compl. (DE 1-2) at 10), is insufficient to demonstrate plaintiff's discharge was based upon nationality, in light of the other allegations in the complaint regarding plaintiff's work history and reasons given for termination. (Compl. (DE 1-2) at 1; Def's Mot. Ex. A (DE 19-1) at 2; Def's Mot. Ex. B (DE 19-2) at 2).

Nor is it sufficient for plaintiff to state a national origin discrimination claim by asserting "[t]here were quite a few instances when a software engineer was laid off in a U.S. team, the position was transferred to India, and [defendant] hired very young persons who just graduated from college to fill the position." (Id. at 10). As an initial matter, this is a conclusory assertion that the court need not accept in evaluating the sufficiency of the complaint. In addition, the actual specific examples cited by plaintiff are an inadequate basis for the claim. Only one alleged example, other than plaintiff, involved replacement of a position by one allegedly "moved to India." (Compl. (DE 1-2) at 9). This was "[a]round 2016," at another office, too isolated in time and place to serve as a meaningful comparison. (Id.). In any event, even assuming there were other positions moved to India, this bald fact alone is not sufficient to create an inference of discriminatory discharge of plaintiff based upon a pattern or statistics. See, e.g., McCleary-Evans, 780 F.3d at 586 ("Only speculation can fill the gaps in [the] complaint -- speculation as to why two 'non-Black candidates' were selected to fill the positions instead of [the plaintiff]. While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is consistent with discrimination, it does not alone support a reasonable inference that the decisionmakers were motivated by bias."); Vaughan v. Metrahealth Companies, Inc., 145 F.3d 197, 203 (4th Cir. 1998) ("[A] sample of seven employees, . . . is too small for reliable analysis" of a pattern or by statistics).

Moreover, cases cited by plaintiff as examples of national origin discrimination are instructively distinguishable by comparison. For example, in Fulford v. Alligator River Farms, LLC, 858 F. Supp. 2d 550 (E.D.N.C. 2012), the court found plaintiffs had stated national origin discrimination claims where "Mexican workers were allegedly allowed to work in teams, speak to each other, start the work day later, and use tools, while [American] plaintiffs were not." Id. at 556. Plaintiff does not make any such allegations as to Indian workers here.

In Albert-Aluya v. Burlington Coat Factory Warehouse Corp., 470 F. App'x 847, 851 (11th Cir. 2012), the court found support for a national origin discrimination claim where one manager "explained that [her terminatinon] was because of her thick African accent'" and another said it was "for failing to speak more like an American." Id. at 851 (emphasis added). In Fragante v. City & Cty. of Honolulu, 888 F.2d 591, 597 (9th Cir. 1989), the employer explained it did not hire plaintiff "because his accent made [him] difficult to understand as determined by the interview, [and] he would be less able to perform the job than other applicants." Id. at 597 (emphasis added). No such statements regarding accent are alleged here.

In sum, plaintiff fails to plead sufficient facts to state a plausible claim based upon national origin discrimination, on a theory of either plaintiff's alleged accent or status as American.

3.   Age Discrimination

The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age[.]" 29 U.S.C. § 623(a)(1). A plaintiff bringing a disparate-treatment claim pursuant to the ADEA must allege facts raising a plausible inference "that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009); McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015).

Plaintiff's age discrimination claim fails for insufficient factual allegations permitting an inference that he was discharged due to his age. As with plaintiff's national origin claim, plaintiff was in the protected class at the time of his hire as a contractor and employee (being at that time more than 53 years old). (Compl. (DE 1-2) at 3). Plaintiff does not allege any statements at or around the time of discharge to permit a plausible inference that age was the "but-for" cause of plaintiff's discharge. Gross, 557 U.S. at 180. Rather, plaintiff alleges that defendant communicated a "Communication Issue" in the Letter of Concern, which issues were reiterated in the Performance Improvement letter. (Compl. (DE 1-2) at 1; Compl. (DE 1-3) at 3; Def's Mot. Ex. A (DE 19-1) at 2; Def's Mot. Ex. B (DE 19-2) at 2).

As with plaintiff's national origin claim, plaintiff suggests reliance upon an alleged pattern of adverse actions against other employees to establish his age discrimination claim. As an initial matter, the examples are not timely: one example cited is from 2014 ("Omar"), and three others are from "[a]round 2016" ("Bob," "Young," and "Liu"), with none within three years of plaintiff's own discharge. (Compl. (DE 1-2) at 9). In addition, two of the examples ("Omar" and "Young") are inapposite because they are demotions, not discharge. (Id.). A third example, involved an engineer ("Bob") who was terminated in 2016, and there is no allegation that he was replaced by a younger individual. (Id.). The remaining example ("Liu"), was terminated from a different office. (Id.).

Due to these deficiencies, and the small number of examples cited, these allegations are insufficient to raise plaintiff's age discrimination claim above a speculative level. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 521 (4th Cir. 2006) ("Any suggestion that the two older employees who left [defendant] around the same time as [an employee's] alleged comments were victims of age discrimination is pure speculation and, without more evidence, simply cannot create

an inference of illegal age discrimination."); Vaughan, 145 F.3d at 203 ("[A] sample of seven employees, . . . is too small for reliable analysis" of a pattern or by statistics). In sum, plaintiff's complaint contains far less than what is required to allege an age discrimination claim based solely upon a pattern of age discrimination, where there are no other facts alleged specific to plaintiff giving rise to an inference of discrimination.

Therefore, plaintiff's claim for age discrimination must be dismissed. Because plaintiff's age and national origin claims fail due to lack of sufficient factual allegations in the complaint, dismissal in this instance is without prejudice.[5]

## CONCLUSION

Based on the foregoing, defendant's motion (DE 19) is GRANTED. Where the court previously stayed case scheduling conference activities, on November 9, 2020, pending decision on the instant motion, the court now LIFTS in such stay. An initial order regarding planning and scheduling will follow.

SO ORDERED, this the 3rd day of May, 2021.

                                                     LOUISE W. FLANAGAN
                                                     United States District Judge

---

[5] Where the court dismisses plaintiff's age and national origin claims on the basis that he failed to allege sufficient facts giving rise to an inference of discrimination, the court does not reach defendant's arguments that plaintiff was never subjected to an adverse employment action, or that plaintiff failed to state a prima facie case because he was not meeting performance expectations.